IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JANET R. HEMMINGER,

                  Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                 Defendant.

OPINION AND ORDER

12-cv-746-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

For the second time, plaintiff Janet R. Hemminger is seeking reversal or remand of the denial of her application for disability insurance benefits.  She filed suit first in 2008 after her claim for disability insurance benefits was denied by an administrative law judge. This court remanded her case to the commissioner, who afforded her a new hearing on September 24, 2009.  A different administrative law judge denied plaintiff's application for benefits after finding that the objective medical evidence failed to establish the existence of a medically determinable impairment that could reasonably be expected to produce plaintiff's symptoms. AR 388.  Unfortunately, the decision of the second administrative law judge does not stand up to scrutiny and the case must be remanded yet again.

1

RECORD FACTS

1. <u>2007 decision of administrative law judge</u>

Plaintiff applied for disability insurance benefits on November 23, 2004, when she was 43, alleging that she had been disabled since July 1, 2003.  After her application was denied, she asked for a hearing, which was held on May 26, 2005.

Plaintiff testified at the hearing that she suffered from fibromyalgia, anxiety and inability to sleep at night.  She attributed her inability to sleep to her pain, which she said could get up to a level of 10 on a bad day.  She also testified that she was not involved in any social activities and that she did not take any pain medication, only medication to help her sleep.  If she went shopping, she could walk around the store for only about 15 to 20 minutes before she had more pain.

On the issue of fibromyalgia, plaintiff saw rheumatologist Dr. Bjarnason on and off from 1996 through 2005.  She saw him in 2004, after having not seen him since 2000.  In 2004, Dr. Bjarnason said she had progressive pain that was becoming more and more associated with fibromyalgia: she had pain in her hands and feet and was stiff and fatigued in the morning when she woke up.  The doctor diagnosed chronic muscle pain compatible with fibromyalgia, chronic back pain, fatigue and arthralgias.  In June 2005, he completed a fibromyalgia questionnaire, saying he had first diagnosed plaintiff's pain in 1996 and that she had a poor prognosis.  He listed her symptoms as pain, poor sleep, chronic fatigue, stiffness, weakness, headaches, numbness and tingling.  He said that her pain was spread throughout her body and was precipitated by changing weather, overuse, static positions,

2

hormonal changes, stress and fatigue.  He estimated she could sit, stand or walk less than two hours a day and would need to change positions frequently, sitting for no more than 30 minutes at a time and walking for 15 minutes at a time without rest.

The only expert testifying at the administrative hearing was Dr. Paul Wiese, a psychologist.  It was his opinion that plaintiff suffered from low-grade depression.  He noted that she had no record of anxiety or a dependent personality disorder.  He found that she had no restrictions of activities of daily living and only mild to moderate deficiencies or limitations in persistence, pace or concentration.  AR 371-72.

The administrative law judge was not persuaded that plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were entirely credible.  She noted that plaintiff had had numerous symptoms over the years, such as abdominal discomfort, thyroid disease and noncardiac chest discomfort and that she had been complaining of pain in various parts of her body as early as 1997.  She had had her thyroid removed in 1993 and had a long psychiatric history but had not been in treatment for many years.  As of May 2004, at least one doctor reported that plaintiff's fibromyalgia and arthralgia were stable and her thyroid was normal following the surgery

 The administrative law judge found that plaintiff had the severe impairment of fibromyalgia but did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  She found that plaintiff had the residual functional capacity to perform sedentary to light work, with an ability to sit, stand or walk for six out of eight hours in a day and lift 10 pounds frequently and 20 pounds occasionally and that

she would need a job in which she could change positions periodically.  She concluded that Dr. Bjarnason did not base his 2005 evaluation of plaintiff's fibromyalgia on his own records but on plaintiff's subjective complaints and her requested limitations.

Without calling a vocational expert, the administrative law judge found that plaintiff was capable of doing light work that required standing or walking for up to six hours a day, sitting for two hours and lifting 10 pounds frequently and that she would need to change positions every half hour.  She had transferable job skills to a variety of office and clerical jobs, but would not be considered disabled even if she were limited to performing unskilled work.  This decision was adopted by the commissioner.

2. 2008 district court decision

Plaintiff appealed to this court from the adverse decision.  In December 16, 2008, I found that the administrative law judge who heard her claim had not made a proper assessment of plaintiff's credibility, had not properly considered the opinion of her treating physician, had not properly addressed her mental limitations and had not made a proper step five determination.  In other words, the administrative law judge had not built an accurate and logical bridge from the evidence to her conclusion that plaintiff's subjective complaints were unworthy of belief.  Hemminger v. Astrue, 08-cv-186-bbc (W.D. Wis. Dec. 16, 2008), at 18.  In remanding the case to the agency, I noted matters to be corrected on remand.  First, the administrative law judge had failed to call a vocational expert to testify about the occupational impact of the requirement that plaintiff change positions every half

4

hour, although Social Security Ruling 83-12 directs administrative law judges to call such an expert to explain how such a restriction would affect the availability of jobs.  Second, it was necessary for the administrative law judge to conduct a new evaluation of plaintiff's residual functional capacity.  The administrative law judge had relied on clinic notes from doctors other than Bjarnason describing plaintiff's fibromyalgia as "stable" and on the advice from doctors that she engage in moderate activity.  As to the first point, she had not explained why she was rejecting Bjarnason's 2005 opinion that plaintiff's condition had worsened over the previous year or why the simple statement by other doctors that plaintiff's condition was "stable" meant that she could work.  As for the exercise recommendations by various doctors, the administrative law judge read them as the doctors' opinion that plaintiff was capable of exercising and would gain benefit from doing so, without acknowledging that the recommendations were the standard "wellness" instructions for all patients.  The administrative law judge did not acknowledge that the doctors seemed to recognize plaintiff's deficits because they told her to exercise to the "best of her ability," even if that was for only 10 minutes at a time.

As another reason for discrediting the extent or intensity of plaintiff's medical problems, the administrative law judge cited the lack of any prescribed treatment other than medication to help plaintiff sleep.  Apparently, the administrative law judge read this as evidence that plaintiff's pain was not severe, without taking into account the possibility that no additional medication or treatment was available to alleviate the pain, although plaintiff had testified at the hearing that Dr. Bjarnason had told her he had no other treatment to

offer her.

3. <u>2009 hearing</u>

     A second administrative hearing was held by video on November 25, 2009, after the case was remanded to the commissioner.  Again, plaintiff was represented by counsel at the hearing.  She testified that she had not worked since 2003, her alleged onset date, and that she filed for disability because of her fibromyalgia, which caused her swelling, fatigue and pain, primarily in her hands, feet, knees and back.  AR 529.  She had been told by doctors to take ibuprofen and Tylenol but they did not help.  AR 530.  She had not seen a rheumatologist since she last saw Dr. Bjarnason in 2007.   She assumed he had retired because she was told to see her primary physician when she called the clinic.  She testified that she could sit up to 30 minutes before having to change positions and that she could stand for about 15 minutes.  AR 532.  She cleaned her house in small increments, doing a little bit of work and then sitting for awhile.  She could drive but "not always."  AR 533.  She could shop for groceries, unload them and put them away and also do laundry.  AR 534.  She testified that she had no health insurance and could not afford her prescriptions for pain medicine.  AR 535.  She said also that she had a few bad days each month, during which she could do nothing but nap, AR 535-37, that she woke up in the middle of night with pain, could not walk long distances as she used to, and needed a nap each day, AR 536-37.   She said she had noticed that her pain was affected by the weather.  AR 538.  She thought her condition had worsened a little in six years because there were fewer things she could do and

6

those only for shorter periods of time.  AR 539.  She did not believe that she could work because increased activity intensified the swelling, muscle weakness and pain she experienced.

Sam Nafoosi, a doctor in internal medicine, testified as an expert medical witness. He never examined plaintiff but had reviewed her medical records.  AR 540.  He questioned plaintiff and learned that she had last seen Bjarnason in 2007 and that she was no longer taking any medication for sleep because she had no insurance and could not afford the twice yearly visits to the doctor to obtain refills of her prescriptions.  AR 543.

It was Nafoosi's opinion that plaintiff had hypertension, with no evidence of end organ damage, multiple joint pains, fatigue and sleep disorder.  AR 544.  He was unwilling to make an independent finding that she had fibromyalgia because he could not find that it had been medically determined.  AR 544.  He acknowledged that Dr. Bjarnason had listed trigger point tenderness in his June 2005 evaluation but pointed out that he had never mentioned it in any of his physical examinations of plaintiff, id. (citing AR 136, 163, 180, 284 and 314), although he had mentioned "tender areas" and "general tenderness."  Id.  In addition, Nafoosi saw no indication that Bjarnason had taken x-rays to rule out other diseases that mimic fibromyalgia, such as osteoarthritis, degenerative disc disease, etc.  AR 544-45.  He added that it would be necessary to rule out a psychological cause for plaintiff's complaints of fatigue, pain and altered sleep habits.  AR 545.  As for the altered sleep habits, he expressed no medical opinion, saying that it was a psychological functional problem that the expert in psychology could take up.

When questioned by plaintiff's attorney, Nafoosi explained that he rejected the diagnosis of fibromyalgia for two reasons.  First, he viewed fibromyalgia as a "diagnosis of exclusion" and no doctor had taken x-rays of the joints about which she had been complaining.  Second, no doctor had identified specific sites of pinpoint tenderness to differentiate them from generalized tenderness.  AR 546.  He admitted that plaintiff's treating physicians believed that plaintiff was suffering from a great degree of pain and that she showed no evidence of malingering, id., but he was not convinced that Bjarnason's evaluation was supported by actual evidence.  AR 549.  He thought the cause of her pain could be fibromyalgia, but that it could just as well be arthritis or a functional problem.  Id.

Craig Rath, Ph.D., testified as a licensed clinical psychologist.  He said he had not met plaintiff before the hearing but had reviewed her medical records and had been present for the hearing testimony.  AR 552.  He testified that he had found "absolutely nothing" in the record to indicate that plaintiff had had any psychologically based impairments since her onset date in 2004.  AR 553.  He noted that plaintiff had complained of a sleep disorder, but in prior testimony she had attributed that to pain and not to anxiety or depression.  AR 554.

Allen Ey testified as a vocational expert.  Upon examination by the administrative law judge, he said that plaintiff could perform her past relevant work as a bookkeeper but not her past relevant work as a tractor-trailer driver.  AR 558.  Neither her inability to sit or stand for no more than six hours a day nor her having to change positions every hour for one to three minutes would keep her from performing her former job of bookkeeping.  AR 558-59.  Ey said that plaintiff could miss one day of work a month and possibly up to two days

"for awhile" without losing her job.  Id.  In response to a question by plaintiff's counsel, he said that plaintiff could not perform her past relevant work if she had to lie down at least once a day and up to three times on her bad days, AR 561, and she could not work as a bookkeeper if she had a restriction on gross manipulation.  AR 562.

### 3. 2010 decision of administrative law judge

In her decision, the administrative law judge began the standard five-step process for determining disability but stopped at step two, when she found that plaintiff had no "medically determinable impairment that could reasonably be expected to produce the claimant's symptoms," AR 388, in other words, she had no "severe impairment" under the Social Security sequential evaluation process.  The administrative law judge based her decision on Dr. Nafoosi's testimony that in the absence of any identification of trigger points, x-ray findings (except one x-ray of plaintiff's lumbar spine, which showed no abnormalities) or other tests that would rule out other causes of plaintiff's pain, he could not support Dr. Bjarnason's opinion that plaintiff suffered from fibromyalgia.  She noted that the record did not reflect the other symptoms commonly associated with fibromyalgia, such as problems with concentration and memory, headaches, bowel or urinary problems and joint swelling.  AR 390.   In fact, plaintiff had testified that although she suffered from headaches, they were not as bad as they had been.  Id.  The administrative law judge noted also that the record contained evidence that at times in the past, plaintiff had denied having headaches or gastrointestinal symptoms, urinary incontinence or swollen, tender or painful

9

joints.  Moreover, the record showed intact motor strength in all of plaintiff's major muscle groups and the absence of any atrophy.

The administrative law judge commented on plaintiff's lack of participation in any exercise program, despite the urging of her treating physicians, and her apparent improvement in a short course of physical therapy.  "It can be inferred that continuance in an exercise program may alleviate some of her other pain complaints."  Id.  She added that she did not doubt that plaintiff had "some pain," but added that plaintiff was taking only ibuprofen and Tylenol.  Id.  She acknowledged that plaintiff had been seen by a rheumatologist, but had had gaps in her treatment.  AR 391.  She was dubious of plaintiff's claims that she was unable to afford additional testing or treatment because of her limited financial resources; plaintiff's husband was employed and she was able to obtain physical therapy and chiropractic treatment, even without insurance.  Id.  Moreover, plaintiff had admitted she could cook, vacuum, clean her  house and do laundry, albeit in small steps. The administrative law judge wrote that it "is likely that [plaintiff] has become less able to sustain activities due to the years of lack of muscle use, and it is also likely that her fatigue is related to her inactivity."  Id.  She also found it worth noting that in March 2007, plaintiff's medical records had said that she had been pushing her mother in a wheelchair and that this activity "seemingly exceeds the restrictions given by Dr. Bjarnason."  AR 391. Finally, the administrative law judge found no evidence that plaintiff had any mental impairments.  Plaintiff had had no counseling and had not experienced any depression or anxiety for some time.  The administrative law judge concluded from all of this that plaintiff

10

would still be capable of performing her past relevant work.  Id.

## OPINION

The first issue is whether, as plaintiff contends, the administrative law judge erred in failing to follow the law of the case, which was the first administrative law judge's conclusion that plaintiff had the severe impairment of fibromyalgia.  She argues that defendant never contested the administrative law judge's earlier decision that plaintiff's fibromyalgia was a severe impairment under step two and nothing in the remand order directed the agency to re-open that issue.  Plaintiff is correct; this court did not direct the administrative law judge to reconsider the step two determination; it merely suggested a new evaluation of plaintiff's residual functional capacity in light of her fibromyalgia.  Dec. 16, 2008 Order, dkt. #11 at 15.

Although "new evidence can furnish compelling grounds for departure from a previous ruling," Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998), the only new evidence that the second administrative law judge had was Dr. Nafoosi's testimony to the effect that Dr. Bjarnason's evaluation of plaintiff was not reliable.  Nafoosi is not a rheumatologist and he did not testify that plaintiff did not have fibromyalgia, but simply said that Bjarnason should have ordered additional tests before arriving at his diagnosis.  He did not say that plaintiff's complaints of pain were unjustified; he said only that he could not determine the cause of her pain from the record.  His testimony was not sufficient to justify the administrative law judge's rejection of the first administrative law judge's determination that plaintiff had the

11

severe impairment of fibromyalgia.

Moreover, the administrative law judge did not acknowledge the absence in the medical record of any indication that plaintiff was malingering or exaggerating her symptoms.  She also said that it was reasonable to infer that plaintiff's pain would be ameliorated and her fatigue lessened if she engaged in an exercise program on a regular basis. AR 390.  This is a judgment for a doctor or other medical professional to make, not for an administrative law judge.   Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000)  ("'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings'") (quoting Rohan v. Chater, 98 F.3d 966, 969 (7th Cir. 1996)).  She erred again when she dismissed plaintiff's testimony that she could not afford to get more frequent treatment for her pain or take more medication, saying that "[i]t does not appear that she is without any resource for medical care," AR 391, because plaintiff's husband was a truck driver and she had been able to pursue physical therapy and chiropractic treatment, despite her lack of health insurance.  This was an improper conclusion.  The record includes no evidence about the state of plaintiff's husband's finances, what arrangements plaintiff had with her medical providers or whether physical therapy and chiropractic treatment cost as much as other kinds of medical treatment that might benefit plaintiff.

In addition, because this case must be remanded yet again, I will point out that a doctor's comment that plaintiff's fibromyalgia and arthralgia were "stable" is of no evidentiary value unless one knows the starting point of those ailments.  Wholly debilitating conditions can be stable, that is, "unchanging" or "not worsening"; it does not follow that

they are not severe impairments.

One other point is worth making.  In her reliance on plaintiff's ability to do some housecleaning, cooking and laundry as evidence that she was not prevented from maintaining fulltime employment, without considering plaintiff's testimony that she did these things in small steps, the administrative law judge committed an additional error.  The Court of Appeals for the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." Roddy v. Astrue, 705 F.3d 631, 639 ((7th Cir. 2013); see also Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons and is not held to a minimum standard of performance, as she would be by an employer.").

As to the issue of plaintiff's mental impairments, the administrative law judge was justified in concluding from the psychologist's testimony that plaintiff had no severe mental impairments that would keep her from working.  In the previous order in this case, AR 394, I suggested that the commissioner should take new evidence to determine whether plaintiff's mental impairments were so severe that she could not work.  Id. at 411-12.  The psychologist's testimony  provided the necessary evidence, AR 555; the administrative law judge need not take any additional evidence on this point.

13

ORDER

IT IS ORDERED that plantiff Janet Hemminger's motion for summary judgment, dkt. #13, is GRANTED, the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability benefits is REVERSED and this matter is REMANDED to the commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 31st day of January, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

14